# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KATHIE FRANKS,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:06-cv-810
(Weber, J.; Hogan, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 8), the Commissioner's response in opposition (Doc. 9), and plaintiff's reply memorandum. (Doc. 10).

## PROCEDURAL BACKGROUND

Plaintiff, Kathie Franks, was born on December 1, 1963, and was 42 years old at the time of the ALJ's decision. Plaintiff has a limited education and no past relevant work experience. Plaintiff filed an application for Supplemental Security Income benefits on February 28, 2002. This application was denied initially and on reconsideration, and plaintiff did not appeal. (Tr. 16-17).

Plaintiff filed another application for Supplemental Security Income on March 27, 2003, alleging she became disabled in December 2001 due to depression and a ruptured disk in her spine. This application was denied initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before an ALJ. On August 31, 2005, plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Ronald Jordan. A Vocational Expert (VE) also appeared and testified at the hearing.

On December 19, 2005, the ALJ issued a decision denying plaintiff's application for SSI. Initially, the ALJ found no basis for reopening plaintiff's prior claim/application and concluded that the prior November 21, 2002 reconsideration determination was binding. (Tr. 17). Therefore, even though plaintiff alleges an onset date of disability of December 1, 2001, the earliest she could be eligible for SSI benefits on her March 2003 application is April 2003, the month following the filing of the current application. *See* 20 C.F. R. §§ 416.202, 416.205.

Next, the ALJ determined that plaintiff suffers from severe impairments of degenerative disc disease, depression, bipolar disorder, anxiety disorder, and alcohol dependency, but that such impairments do not meet or equal the level of severity described in the Listing of Impairments. (Tr. 19-22). The ALJ determined that plaintiff's allegations concerning her pain and limitations are not entirely credible. (Tr. 23). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to perform a range of sedentary work involving the ability to stand and stretch every thirty minutes for up to two to three minutes, and lifting, carrying, pushing, and pulling up to ten pounds occasionally and five pounds frequently. (Tr. 22). The ALJ further restricted plaintiff to simple, repetitive, one- to two-step

2

tasks that involved carrying out only simple instructions, work in a stable environment with little or no change, no traveling from location to location, only occasional contact with coworkers and supervisors, and no contact with the general public. (Tr. 22). The ALJ determined that plaintiff retains the capacity to perform work that exists in significant numbers in the national economy including sedentary jobs as an assembler, inspector, and handpacker. (Tr. 26). Consequently, the ALJ concluded that plaintiff is not disabled under the Act. The Appeals Council denied plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To

3

establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

4

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.1525(a). If plaintiff suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff's impairment need not precisely meet the criteria of the Listing in order to obtain benefits. If plaintiff's impairment or combination of impairments is medically equivalent to one in the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. § 404.1526(a). The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(b).

If plaintiff's alleged impairment is not listed, the Commissioner will decide medical equivalence based on the listed impairment that is most similar to the alleged impairment. 20 C.F.R. § 404.1526(a). If plaintiff has more than one impairment, and none of them meet or equal a listed impairment, the Commissioner will determine whether the combination of impairments is medically equivalent to any listed impairment. *Id.*

Plaintiff has the burden of establishing disability by a preponderance of the evidence.

5

*Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708

6

F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court

7

must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir.

8

1985).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 8 at 2-3; Doc. 9 at 2-9) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns two errors in this case. First, plaintiff asserts the ALJ erred by not finding plaintiff's impairments met or equaled Listing 1.04A. Second, plaintiff contends the ALJ erred in determining plaintiff's RFC. Plaintiff contends that the ALJ's errors in these regards mandates a reversal of the ALJ's decision for an award of benefits or, in the alternative, a remand for further proceedings. For the reasons that follow, the Court finds the ALJ's RFC decision is not supported by substantial evidence and recommends that this matter be reversed and remanded for further proceedings.

## I. The ALJ's Listing Decision is Supported by Substantial Evidence.

Plaintiff argues the ALJ erred by not finding her impairments met or equaled Listing 1.04A. (Doc. 8 at 5-6). Listing 1.04 governs disorders of the spine:

*Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or

9

reflex loss and, if there is involvement of the lower back, positive straight-leg
raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1 §1.04 (A).  Thus, to satisfy paragraph A, plaintiff must

demonstrate: (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3)

motor loss (atrophy with associated muscle weakness or muscle weakness); (4) sensory or

reflex loss; and (5) positive straight leg raise test, in both the sitting and supine positions.  In

addition, the regulations require that abnormal findings must be established over a period of

time: "Because abnormal physical findings may be intermittent, their presence over a period of

time must be established by a record of ongoing management and evaluation." 20 C.F.R. Part

404, Subpart P, Appendix 1, § 1.00D.

The ALJ determined that plaintiff did not meet or equal Listing 1.04 because "[s]he

does not have the required sensory, reflex, or motor loss and is able to ambulate effectively

without the use of an assistive device." (Tr. 22).

Plaintiff contends the ALJ erred in this regard, pointing to evidence of "chronic

complaints of pain (Tr. 196, 248-280, 281-286, 300, 340), and clinical findings of positive

straight leg raise (Tr. 253, 264, 266, 276), decreased range of motion (Tr. 257, 310), reflex

loss (Tr. 389), weakness (Tr. 252, 257, 264, 412) and loss of sensation (Tr. 252, 264, 412)" as

required by the Listing. (Doc. 8 at 5).

The ALJ's Listing finding is supported by substantial evidence in the record.  At issue

is the ALJ's finding of no evidence showing the required abnormal sensory, reflex, or motor

loss.  Although plaintiff points to evidence of each of these findings in certain instances, she

10

fails to cite to evidence showing that such findings persisted over a period of time as required by Listing 1.00D.

In terms of abnormal sensory or motor loss (muscle weakness) findings, plaintiff displayed normal (5/5) strength[1] and normal and symmetrical reflexes in April 2002. (Tr. 266). The following month, plaintiff again exhibited 4/5 (good) strength and symmetrical reflexes. (Tr. 264). While plaintiff cites to a finding of decreased sensation during this visit (Tr. 264), she exhibited normal sensation, reflexes and strength during a subsequent consultative examination in October 2002. (Tr. 310). In her statement of errors, plaintiff points out that emergency room records show she had weakness in November 2002. (Doc. 8 at 5, citing Tr. 257). However, a physician's assistant noted that the "somewhat decreased" strength on plaintiff's left side was due to a "lack of effort." (Tr. 257). At that same visit, plaintiff was noted to have symmetrical reflexes. (Tr. 257).

Plaintiff notes that she had weakness and loss of sensation (Tr. 252, 412) in an approximate two-and-a-half week period in April and May 2003. (Doc. 8 at 5). However, she reported "significant improvement" following a brief physical therapy program, and doctors did not subsequently document neurological abnormalities. (Tr. 250, 419). Her April 2003 examination also revealed 4+/5 strength and negative straight leg raising. (Tr. 252). Importantly, plaintiff fails to identify any instances of reflex loss, weakness, or decreased sensation from June 2003 through July 2005 — a period of over two years. (Doc. 8 at 5). The evidence cited by plaintiff simply fails to establish a persistence of abnormal strength or

---

[1]Muscle strength is rated as follows: 1 (trace); 2 (poor); 3 (fair); 4 (good); and 5 (normal). *The Merck Manual of Diagnosis and Therapy* 2492 (17th ed. 1999) (*Merck*).

sensation findings as required under the Listing.

Likewise, plaintiff's citation to a single instance of reflex loss in July 2005 (Doc. 8 at 5, citing Tr. 389) fails to indicate the presence of abnormal reflex loss over a period of time under Listing 1.00D. The doctor characterized this as "some slight reduction of reflex in the left leg compared to the right." (Tr. 389). Motor testing revealed "full strength throughout" and sensory exam showed "touch, pin, vibration, and position sense intact." *Id.* Plaintiff's gait and station were normal. *Id.* Taken as a whole, the ALJ's finding that plaintiff did not meet or equal the requirements of Listing 1.04A is supported by substantial evidence in the record.[2]

## II. The ALJ's RFC finding is not supported by substantial evidence.

The ALJ determined that plaintiff was limited to sedentary work with a sit/stand option every thirty minutes for two- to three-minute intervals. (Tr. 22). Plaintiff contends the ALJ erred in his physical RFC determination by failing to incorporate the bending restrictions imposed by Dr. Gupta and Dr. Koppenhoefer, the only two examining physicians who developed RFC opinions. Dr. Gupta opined that plaintiff was "extremely limited" in her ability to bend. (Tr. 38). Dr. Koppenhoefer opined that plaintiff would have limitations "in regard[s] to bending" without specifying any particular limits. (Tr. 311).

It is not clear from the ALJ's decision how he arrived at his RFC assessment. The ALJ

---

[2]To the extent plaintiff argues the ALJ misconstrued Listing 1.04 by requiring an inability to ambulate effectively (Doc. 8 at 6), plaintiff's argument is misplaced. Although the ability to ambulate effectively is not a requirement under Listing 1.04*A*, it is a requirement under Listing 1.04*C*. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04C. Thus, the ALJ properly considered this factor when determining whether plaintiff satisfied any paragraph of Listing 1.04.

12

appears to have adopted Dr. Gupta's March 2002 physical functional capacity assessment.[3] The ALJ's decision states, "Although Dr. Gupta opined that the claimant is unemployable, his assessment (Exhibit 1A/10) is consistent with the undersigned's residual functional capacity assessment to do sedentary work." (Tr. 22). The only other comments from the ALJ on plaintiff's physical functional capacity are his rejection of the state agency physician's assessment that plaintiff was capable of medium work and the rejection of Dr. Koppenhoefer's opinion that plaintiff should be able to change positions at will. (Tr. 22).

The bending restrictions imposed by Drs. Gupta and Koppenhoefer may have serious vocational implications in this case. Bending encompasses two types of activities: "stooping (bending the body downward and forward by bending the spine at the waist) and crouching (bending the body downward and forward by bending both the legs and spine)." Social Security Ruling 83-14. Most unskilled sedentary jobs require no crouching and only occasional stooping, that is from very little up to one-third of the time. Social Security Ruling 83-14. However, "[a] *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply . . . ." Social Security Ruling 96-9p (emphasis in the original).

The ALJ failed to address Dr. Gupta's opinion that plaintiff is "extremely limited" in her ability to bend. Nor did the ALJ seek clarification from Dr. Koppenhoefer on the extent of plaintiff's bending restriction. The vocational expert did not know the meaning of the term

---

[3]Because the ALJ appears to find Dr. Gupta's assessment relevant despite being rendered in connection with plaintiff's previous SSI application and prior to the period of adjudication for plaintiff's current SSI application, the Court declines the Commissioner's contention that this assessment should not be considered in the substantial evidence review. (Doc. 9 at 16).

13

"extreme," but confirmed that a complete inability to bend would preclude the jobs he previously identified–the jobs upon which the ALJ relied for a finding of not disabled. (Tr. 464). Because of the vocational implications of the bending restrictions imposed by Drs. Gupta and Koppenhoefer and the ALJ's total failure to address the issue, the Court finds the ALJ's physical residual functional capacity assessment is without substantial support in the record. Accordingly, this matter should be remanded for reconsideration of plaintiff's physical residual functional capacity, including consideration of plaintiff's bending limitations.

Plaintiff also argues that the ALJ's mental residual functional capacity assessment is in error because the ALJ failed to give proper weight to the opinion of Dr. DeSilva, plaintiff's treating psychiatrist, whose assessment was supported by the clinical findings of Dr. Dahar, another treating psychiatrist. Dr. DeSilva, who treated plaintiff every one to two weeks from April 7, 2005 through September 6, 2005, assessed that plaintiff from a mental standpoint had "no useful ability to function" in seven relevant aptitudes, and was "unable to meet competitive standards" in 14 relevant aptitudes. (Tr. 393)[4]. Dr. DeSilva also opined that plaintiff's current GAF[5] score was 40 and her highest GAF score for the past year was 60.[6]

---

[4]Although the RFC from Dr. DeSilva at Tr. 391-395 is unsigned and undated, the record contains a letter from plaintiff's counsel purporting to submit a signed RFC from the doctor. (Tr. 396). There are handwritten notations on the letter indicating that "duplicates" were submitted, but then removed. (Tr. 396). Since the ALJ accepted the RFC assessment as being rendered by Dr. DeSilva, the Court accepts it as well.

[5]The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. The DSM-IV categorizes individuals with scores of 41 to 50 as having "serious" symptoms. *See* DSM-IV at 32. Individuals with scores of 51-60 are classified as

In determining plaintiff's mental residual functional capacity, the ALJ gave

"substantial weight" to the opinions of the one-time psychological consultants Dale E. Seifert,

MS Ed., and Richard E. Sexton, Ph.D. (Tr. 24) while discrediting every treating source who

found plaintiff to be more severely compromised by her mental impairments. The ALJ gave

"little weight" to Dr. DeSilva "who treated the claimant for a fairly short time." (Tr. 24). The

ALJ stated:

> Dr. DeSilva's residual function capacity assessment and current GAF score of
> 40 was (sic) inconsistent with his assessed GAF score of 60 for the past year.
> Although Dr. DeSilva assessed the claimant to have a low GAF of 40 at one
> particular point in time, her higher score of 60 is more consistent with the
> overall evidence of record. Moreover, Dr. DeSilva did not address the impact
> of the claimant's drug and alcohol abuse on her mental status.

(Tr. 24). The ALJ also noted that plaintiff's therapist, Daniel Watson:

> assessed a GAF score of 45, with a diagnosis of major depression, recurrent,
> severe, R/O Dysthymia, and poly substance abuse–partial remission. However,
> Daniel Watson is a licensed social worker and not a physician or licensed
> psychologist. (Exhibit 11F/24). Accordingly, his opinion carries little, if any,
> weight.

(Tr. 24). Dr. Dahar, upon his initial evaluation of plaintiff on March 17, 2003, diagnosed

bipolar disorder and generalized anxiety disorder with a GAF score of 40. The ALJ noted that

---

having "moderate" symptoms. *Id.* The next higher category, for scores of 61 to 70, refers to an individual with
"some mild" symptoms who is "generally functioning pretty well." *Id.*

[6]"A GAF code of 41-50 indicates serious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals,
frequent shoplifting), [or] serious impairment in social or occupational functioning (*e.g.,* no friends, unable to keep a
job)." *Hurley v. Barnhart,* 385 F. Supp.2d 1245, 1262 n. 5 (M.D. Fla. 2005)(citing DSM-IV at 32). A GAF score
of 60 indicates a moderate impairment in psychological functioning. *See Kennedy v. Astrue,* 2007 WL 2669153, *4
(6th Cir. 2007) (citing *Kornecky v. Commissioner of Social Security,* 167 Fed. Appx. 496, 503 (6th Cir. 2006)
(explaining that a "GAF of 51-60 indicates moderate symptoms (*e.g.,* flat affect and circumstantial speech,
occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends,
conflict with peers or co-workers).") *Id.* (internal quotation marks omitted).

one week previous to Dr. Dahar's assessment, plaintiff was given a GAF score of 55 by "the Department of psychiatry at the University Hospital" on March 10, 2003. (Tr. 25, 186). The ALJ found noteworthy that neither Mr. Watson nor Dr. Dahar discussed the impact of plaintiff's alcohol abuse on their assessments. (Tr. 25). The ALJ also discussed Dr. Dahar's treatment notes from April 2003, which showed she felt much better after discontinuing Paxil. (Tr. 25, 215). The ALJ noted that plaintiff "attended and participated in routine activities, had no manic or psychotic symptoms, and had no suicidal or homicidal ideas, intents or plans." (Tr. 25). The ALJ concluded, "Clearly, her GAF score increased after a few treatments from Dr. Dahar." (Tr. 25).

The ALJ's rejection of the treating source opinions in these respects is not supported by substantial evidence. Although the ALJ is not bound by a treating physician's opinion, he must set forth in his decision a reasoned basis for rejecting the opinion. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)(failure to specify the reason for giving a treating physician's opinion no weight is reversible error); *Jones v. Heckler*, 760 F.2d 993, 997 (9th Cir. 1985)(ALJ must set forth "specific, legitimate reason[s]" for disregarding a treating physician's opinion), both cited with approval in *Shelman*, 821 F.2d at 321. The ALJ must articulate "good reasons" for not giving weight to a treating physician's opinion and such reasons must be based on the evidence of record. *See Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).

In this regard, the ALJ concluded that Dr. DeSilva's GAF score of 60 for the past year was "more consistent with the overall evidence of record" without giving any evidentiary basis explaining this conclusion. The ALJ's conclusory statement ignores the objective

16

findings[7] of plaintiff's treating sources.  Dr. DeSilva treated plaintiff every one to two weeks

from April 7, 2005 through September 6, 2005. (Tr. 401-408).  Dr. DeSilva identified

numerous signs and symptoms which support his RFC assessment.  These include findings of

decreased energy, blunt, flat or inappropriate affect, impairment in impulse control, poverty of

content of speech, disturbances of mood and affect, apprehensive expectation, seclusiveness,

emotional withdrawal or isolation, hyperactivity (mild to moderate), emotional lability, flight

of ideas, manic syndrome, loosening of associations, pressures of speech, and sleep

disturbances. (Tr. 392, 402-408)[8].  Dr. Dahar, a psychiatrist who treated plaintiff from March

2003 through September 2004, reported findings of mood swings, increased anxiety, and

agitation (Tr. 379–6/23/03); depression, anxiety, and insomnia (Tr. 380–12/29/03); decreased

energy and motivation, anxiety, and depression (Tr. 381–1/19/04); depression and anxiety (Tr.

382–2/17/04); increased anxiety, mind racing and insomnia (Tr. 383–3/30/04); stable

condition (Tr. 384–6/18/04); side effects from medications, withdrawn, and sleeping 10-12

hours per day (Tr. 385–8/25/04); and racing thoughts and flight of ideas, nervousness, anxiety,

agitation, and insomnia. (Tr. 386–9/22/04).  Dr. Dahar's clinical findings appear to support the

opinion of Dr. DeSilva, yet the ALJ failed to acknowledge such findings and, instead,

---

[7]Objective medical evidence consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c). *See* 20 C.F.R. § 404.1512(b)(1). "Signs" are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b).

[8]Admittedly, Dr. DeSilva's progress notes are difficult to decipher.  However, the ALJ gave no indication he even considered these notes or questioned Dr. DeSilva's findings set forth in his RFC assessment at Tr. 392 which were presumably based on these notes.

selectively cited to a single April 14, 2003 therapy note in support of his RFC finding to the exclusion of the balance of Dr. Dahar's notes. (Tr. 25). The ALJ's selective presentation of therapy notes showing one positive aspect of plaintiff's functioning does not negate the findings set forth in the remainder of the therapy notes showing a further impairment in plaintiff's functioning. Thus, the ALJ's rejection of the treating physician's opinion in this regard is not supported by substantial evidence. *See Howard v. Commissioner*, 276 F.3d 235, 240-41 (6th Cir. 2002).

In addition, the Court finds the basis for the ALJ's rejection of plaintiff's therapist, Daniel Watson, to be disingenuous. Mr. Watson, a licensed independent social worker with a master's degree in social work, assessed plaintiff with a GAF score of 45. (Tr. 270). The ALJ rejected Mr. Watson's assessment because he "is a licensed social worker and not a physician or licensed psychologist." (Tr. 24).

The ALJ then goes onto to point out that Dr. Dahar's GAF score of 40 conflicted with the GAF score of 55 assessed by "the Department of psychiatry at the University Hospital." (Tr. 25, 186). A review of this higher GAF score at Tr. 186 shows that this assessment was made by an individual with the designation "MSW" (a master's degree in social work), just like Mr. Watson. It is misleading to cite to the "the Department of psychiatry at the University Hospital" without disclosing that the source of the opinion is an individual with an MSW degree. It is also disingenuous for the ALJ to discredit Mr. Watson's reported GAF because he is not a physician or licensed psychologist, but then to credit a higher GAF score of "the Department of psychiatry at the University Hospital" when in fact that assessment was not made by a physician or licensed psychologist, but rather by someone with equal or lesser

18

credentials than Mr. Watson.

The ALJ also discredits the treating sources because they fail to discuss the impact of plaintiff's alcohol abuse on her mental status. (Tr. 24, 25). Although there is evidence of alcohol abuse in 2002 and 2003 (Doc. 9 at 18 citing to Tr. 169, 172, 184, 189, 209, 216, 254), the Commissioner has failed to point to any such evidence in 2004 and 2005. Moreover, the consultative examiners to whom the ALJ gave substantial weight did not address the effect of alcohol abuse on plaintiff's functioning.

In addition, the ALJ's mental RFC fails to account for the variations of plaintiff's level of functioning over an extended period of time, specifically between 2002 and 2005. The Social Security regulations recognize the need for longitudinal evidence and that a claimant's level of functioning may vary considerably over time. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (D)(2). Since the level of functioning at any specific time may seem relatively adequate or, conversely, rather poor, proper evaluation of plaintiff's mental impairments must take into account variations in levels of functioning in determining the severity of her impairments over time. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (D)(2). The ALJ relied on evidence from a one-time consultative examination in September 2002 (Tr. 24, 304-308), which occurred prior to the start of the November 2002 adjudication period, and a one-time consultative examination in July 2003. (Tr. 24, 225-230). Drs. DeSilva and Dahar were the only doctors who examined and assessed plaintiff from a mental standpoint in 2004 and 2005. They are the only doctors who provided any longitudinal evidence giving insight into plaintiff's level of functioning in 2004 and 2005 and over a period of time. By relying on two, one-time consultative exams from 2002 and 2003, the ALJ failed to adequately assess plaintiff's mental functioning in

**19**

2004 and 2005 as documented by Drs. Dahar and DeSilva and failed to account for the fluctuations in plaintiff's level of functioning over time.  The two examinations in 2002 and 2003 are not substantial evidence to support plaintiff's functioning in 2004 and 2005.  Accordingly, the ALJ's mental RFC determination is without substantial support in the record and must be reversed.

To the extent plaintiff also contends that ALJ failed to properly consider the side effects of plaintiff's medication, this assignment of error is without merit.  Dr. Dahar repeatedly reported that plaintiff experienced no side effects from her medications (Tr. 379-384, 386) with the exception of one instance. (Tr. 385).

For these reasons, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of the start of the November 2002 adjudication period. *Faucher,* 17 F.3d at 176.  This matter should be remanded for further proceedings, including a determination of plaintiff's physical and mental RFC and an explanation on the record therefor and further vocational considerations consistent with this decision.  While the reports of Drs. DeSilva and Dahar suggest plaintiff's mental impairments have worsened over time and are strong evidence plaintiff cannot perform substantial gainful activity, such reports and records were written some two years after the commencement of the adjudication period

20

relating to plaintiff's current SSI application.  Thus, the ALJ should address the issues of onset and duration on remand as well.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner by **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date:_____

Timothy S. Hogan
United States Magistrate Judge

21

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KATHIE FRANKS,
      Plaintiff

vs

                                     Case No. 1:06-cv-810

                                     (Weber, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

22